SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   CV 03-2873 MMM (VBKx)                           Date   May 31, 2005

Title   *Stewart v. Wachowski, et al.*

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

None                                                        None

**Proceedings:**      **Order Denying Plaintiff's Motion For Relief Pursuant To Rule 60(b)**

On May 18, 2005, plaintiff Sophia Stewart filed a motion seeking substantial continuances of the case management dates in this action, particularly the long since passed discovery cut-off date of March 25, 2005. She also seeks relief from admissions that resulted from her failure to respond to defendants' January 12, 2005 requests for admissions until May 5, 2005.[1]

## I. PROCEDURAL HISTORY

Stewart alleges that defendants willfully infringed her copyrighted literary works, both titled "The Third Eye," "and used [them] as their own property in the making of the motion pictures The Matrix I, II, and III, and The Terminator I, II, and III."[2] She asserts claims against defendant film-makers, producers and film studios for copyright infringement, declaratory relief and violation of the Racketeer

---

[1] Plaintiff's current counsel states that he "did not serve [the responses to the requests for admission] until May 9, 2005." (Declaration of Michael T. Stoller In Support Of Plaintiff's Motion To Continue Pursuant To Rule 60(b) ("Stoller Decl."), ¶ 10.) Defendants indicate, however, that the responses were postmarked May 5, 2005. (Defendants' Memorandum Of Points And Authorities In Opposition To Plaintiff's Motion For Relief Pursuant To Rule 60(b) ("Defs.' Opp.") at 2.)

[2] Second Amended Complaint ("Complaint"), ¶ 64.



Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 et seq.[3] Stewart filed the action *pro se* on April 24, 2003. It was assigned to Judge Terry J. Hatter. On March 15, 2004, after Stewart had failed to serve summons and complaint on any defendant for almost eleven months, Judge Hatter scheduled a hearing as to whether the action should be dismissed for lack of prosecution. Stewart appeared at the hearing and filed written opposition to the dismissal. She appears to have represented that she was "retain[ing] counsel," and the case was not dismissed.[4] Stewart served the summons and complaint on defendants in late April and early May 2004. On June 14, 2004, the action was transferred to this court. On July 14, 2004, after Stewart retained attorneys Gary Brown of Gary S. Brown Law Offices, Dean Browning Webb of Dean Browning Webb Law Offices, and Jonathan W. Lubell of Jonathan W. Lubell Law Offices to represent her, she filed a first amended complaint. On September 27, 2004, the court held a scheduling conference at which Brown and Webb appeared for plaintiff. The court set the following case management dates:

| | |
|---|---|
| Fact Discovery Cut-Off: | March 25, 2005 |
| Initial Expert Disclosures: | April 8, 2005 |
| Rebuttal Expert Disclosures: | April 22, 2005 |
| Expert Discovery Cut-Off: | May 6, 2005 |
| Motion Hearing Cut-Off: | May 23, 2005 at 10:00 a.m. |
| Final Pretrial Conference: | June 20, 2005 at 9:00 a.m. |
| Trial: | July 12, 2005 at 8:30 a.m. |

Soon after the September 27, 2004 scheduling conference, Webb withdrew as one of Stewart's attorneys. Brown and Lubell remained counsel of record, however. On March 8, 2005, Michael Thomas Stoller of the Michael T. Stoller Law Offices associated with Brown and Lubell as Stewart's counsel. Brown, Lubell and Stoller were assisted in prosecuting the action by attorney Terry Gross, who appeared at a March 21, 2005 hearing on defendants' motion to dismiss plaintiff's RICO claims, and represented that he had worked on the development of those claims.

On March 25, 2005, Stewart filed an *ex parte* application seeking to continue the fact discovery cut-off date from March 25 to July 29, 2005. She also sought substantial continuances of all other case management dates as well. The papers filed by the parties regarding Stewart's *ex parte* application revealed that Stewart had not initiated *any* discovery until March 25, 2005 (the fact discovery cut-off date), at which time she served a document production request and deposition notices on defendants. Stewart had also failed to respond in a timely fashion to discovery propounded by defendants or to appear for her deposition, although the parties had twice scheduled a date and time for the deposition. In her *ex parte* application, Stewart asserted that good cause existed to continue the case management dates. She argued that her failure to complete discovery by the cut-off date originally set was due to changes in

---

[3] *Id.*, ¶¶ 66-131.

[4] See April 12, 2004 Minute Order.

counsel, the recent health problems of one of her three attorneys of record, time spent responding to a motion to dismiss filed by defendants and the effort expended in producing her (admittedly untimely and incomplete) responses to defendants' discovery.[5] On April 4, 2005, the court denied Stewart's *ex parte* application, finding *inter alia* that,

> "plaintiff ha[d] not been diligent either in pursuing or in responding to discovery. Despite the fact that the action had been on file for almost two years, she made no effort to propound any discovery to defendants until the fact discovery cut-off date set by the court. Nor did she respond in timely fashion to discovery propounded by defendants. This [wa]s consistent with the overall manner in which plaintiff has prosecuted the action, missing deadlines, seeking extensions, and generally ignoring the Federal Rules of Civil Procedures and court orders."[6]

On April 29, 2005, defendants filed a motion to dismiss the second amended complaint, a motion to preclude Stewart from testifying, and two motions for summary judgment.[7] The motions were timely filed based on the motion hearing cut-off date of May 23, 2005 set by the court. To accommodate the court's calendar, however, the hearing on defendants' motions was set for June 13, 2005; the court ordered that Stewart's opposition be filed no later than May 16, 2005 and that any reply by defendants be filed no later than May 23, 2005. On May 16, 2005, Stewart filed a pleading indicating that she had terminated her attorney-client relationship with Lubell and Brown. The same day, she filed opposition to defendants' motion to dismiss and motion to preclude her testimony. Stewart failed to oppose either summary judgment motion, however. Nor did she submit an application requesting additional time to file opposition. Pursuant to the Local Rules, Stewart's "failure to file [the] required [opposition] . . . may be deemed consent to the granting . . . of the motion." CA C.D. L.R. 7-12.

On May 18, 2005, two days after Stewart had missed the deadline to oppose defendants' summary judgment motions, more than six weeks after the court's April 4, 2005 order denying her *ex parte* application to continue the case management dates, and only three business days before the motion hearing cut-off date in this case, Stewart moved for reconsideration of the court's April 4, 2005 order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. In addition to seeking additional time to conduct discovery, Stewart asks that she be permitted to withdraw the admissions that resulted from her failure to respond to defendants' January 12, 2005 requests for admissions until May 9, 2005.

---

[5] Plaintiff's *Ex Parte* Application To Continue The Discovery, Motion Cut-Off Dates, Etc., And/Or Trial ("Pl.'s Appl.") at 8.

[6] April 4, 2005 Order Denying Plaintiff's *Ex Parte* Application For Continuance Of Case Management Dates ("April 4, 2005 Order").

[7] One summary judgment motion was filed by defendants associated with production and distribution of The Matrix films. The other was filed by defendants associated with production and distribution of The Terminator films.

Stewart concedes that her attorneys failed to propound *any* discovery in a timely fashion, and that they failed to serve timely responses to defendants' demands for documents, special interrogatories and requests for admission.[8] She also admits that her attorneys "have provided no reasonable explanation for these failures."[9] Stewart also does not dispute that she never appeared for a deposition in this case.

Stewart asserts that her lawyers "failed to keep her informed about the status of [her] deposition," and consequently she did not learn that her attorney had cancelled the deposition until her friend called *defense counsel* the day before the first scheduled deposition date – February 22, 2005 – to inquire whether she should appear.[10] She admits that her lead counsel, "Mr. Lubell[,] [then] agreed to produce [her] for . . . deposition on March 17, 2005," and that she did not appear on that date.[11] She notes, however, that one of her three attorneys of record, Gary Brown, suffered heart failure and was hospitalized on March 14, 2005, and asserts that, as a result of this medical emergency, Brown was "unable to assist in [her] production of documents [and] in preparing [her] for her deposition."[12] Stewart, however, does not dispute attorney Michael Stoller's statement that he and Lubell were the lawyers responsible for preparing Stewart for the deposition.[13] Similarly, she does not dispute Brown's statement in his declaration that he was retained to "provide assistance only by processing . . . papers in the lawsuit,"[14] that he never interviewed Stewart,[15] and that he "never had any discussions with [her] about the case strategy or discovery."[16] Given the undisputed fact that Brown had no responsibility for preparing Stewart for her deposition, Stewart's suggestion that she did not appear for deposition in March because of Brown's medical emergency must be rejected. Moreover, as with her last *ex parte* application, Stewart has once again failed to offer *any* explanation for her counsel's cancellation of the deposition in February.

---

[8]Plaintiff's Motion To Continue Case Management Dates Pursuant To Rule 60(b) ("Pl.'s Mot.") at 1.

[9]*Id.*

[10]*Id.*

[11]*Id.* at 2-3.

[12]*Id.* at 2.

[13]See Declaration of Michael T. Stoller In Support Of Plaintiff's *Ex Parte* Application To Continue The Discovery, Motion Cut-Off Dates, Etc., And/Or Trial ("Stoller *Ex Parte* Decl."), ¶ 4.

[14]Declaration Of Gary Brown In Support Of Plaintiff's Motion For Relief Pursuant To Rule 60(b) ("Brown Decl."), ¶ 4.

[15]*Id.,* ¶ 15.

[16]*Id.,* ¶ 11.

This, of course, predated the onset of Brown's symptoms.

## II. ANALYSIS

### A. The Applicable Standard For Plaintiff's Motion For Reconsideration Is Contained In Local Rule 7-18

Stewart contends that Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure provide grounds for the court to set aside its case management dates and its prior order denying a continuance of those dates. Rule 60(b) provides in relevant part that:

> "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment." FED.R.CIV.PROC. 60(b).

Defendants counter that Rule 60(b) is not a proper vehicle for relief from an interlocutory order, and that Stewart must instead rely on the standard for reconsideration contained in Local Rule 7-18.[17] The Ninth Circuit has recognized that Rule 60(b), which references relief "from a final judgment, order or proceeding," applies only to dispositive judgments or orders. See *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("It is irrelevant that McKenna characterized her motion as one for relief from a judgment or order on grounds of fraud under Federal Rule of Civil Procedure 60(b). 'The label attached to a motion does not control its substance.' *United States v. State of Oregon*, 769 F.2d 1410, 1414 n. 4 (9th Cir. 1985). Moreover, a preliminary injunction is not a 'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)"); accord *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 343 (7th Cir. 2004) ("Rule 60(b) is applicable only to 'final' judgments"); *St. Mary's Health Center v. Bowen*, 821 F.2d 493, 498 (8th Cir. 1987) ("Rule 60(b) applies only to relief from a final judgment or order"). Stewart's motion, therefore, is properly construed as a motion for reconsideration under Local Rule 7-18.

Local Rule 7-18 provides:

> "A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such

---

[17]Defs.' Opp. at 2-3.

decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." CA C.D. L. R. 7-18.

Stewart contends that, if Local Rule 7-18 provides the applicable standard, she is nonetheless entitled to relief based on newly discovered "facts" set forth in Stoller's declaration. She asserts that

> "[t]he declaration of Michael T. Stoller presents facts showing that plaintiff [was] kept in the dark about the following matters: the status of her case, the fact that her prior counsel had not conducted any discovery on her behalf, that they otherwise failed to protect her right to conduct discovery, that requests for admissions were deemed admitted against her, that they . . . failed to take any steps to get extensions to respond, and that they had no[ ] good excuse for such failures."[18]

Having reviewed the Stoller declaration in search of the new "facts" Stewart cites, the court presumes that she references the following (mostly hearsay) statements:[19]

> "11. From March 21, 2005 through April, I had several conversations with plaintiff about the status of the case, my discovery of the court's cut-off dates and the problems I had encountered. Plaintiff was unaware of these things and only knew she would need to make herself available for deposition since it was rescheduled and . . . she agreed to do [that]. She mentioned the problem Mr. Lubell had when Mr. Webb abandoned his responsibility for handling the RICO claims. However, Mr. Lubell assured plaintiff that he [had] arranged for assistance and that the matter was progressing. . . .
>
> 17. Since my involvement in this matter, although Mr. Lubell remained lead counsel, it became clear that unless I initiated contact, recommended a course to pursue, or asked

---

[18]Pl.'s Reply at 3-4.

[19]The fact that much of Stoller's declaration is hearsay does not preclude its consideration in connection with this motion. See *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 (Fed. Cir. 1994) (comparing Rule 12(b)(2) with Rule 56(e), and rejecting the argument "that the second Shaneyfelt Declaration cannot be considered because it is based on hearsay and thus inadmissible" because "defendants . . . cited [no] authority in support of such a rule" and the court was "unaware of any, either in the Federal Rules of Civil Procedure or elsewhere"). Nonetheless, the fact that Stewart failed to submit a declaration identifying the date on which she first learned of her attorneys' failure to propound discovery and to respond in a timely fashion to defendants' discovery requests – when she could easily have done so – affects the weight to be given to the evidence. Stewart declares, in vague terms, that she "did not learn of [her] attorney's grossly negligent conduct until after the court denied [her] *ex parte* application." (See Declaration Of Sophia Stewart In Support Motion To Continue Case Management Dates Pursuant to Rule 60(b) ("Stewart Decl."), ¶ 5.) This appears inconsistent with Stoller's statement that he had conversations with Stewart as early as March 21, 2005, regarding the status of discovery and the case management dates that had been set.

questions, nothing would happen. I believe that this situation goes back to when Mr. Webb assisted in this matter. At that time, it appears Mr. Webb directed how plaintiff's case would proceed. After [Webb] ceased to provide further work, Mr. Gross was enlisted for a limited engagement and unfortunately, Mr. Lubell withdrew from or never assumed [t]he position to direct or lead the course the team would pursue. None of this was known by plaintiff. Once she hired counsel in July, 2004, she placed her confidence, trust, and responsibility for prosecuting the case in the hands of her attorneys. She expected they would do all that was required to get her day in court. . . .

19. . . . To her it appeared things were moving forward. Until my conversations with plaintiff during the last couple of weeks she was totally unaware of the court's Pre-trial scheduling order imposing various deadlines. . . . Although she was aware of Mr. Webb's abandonment, she was assured by Mr. Lubell [that] everything [had been] handled."[20]

### B. The "New Facts" Presented Do Not Justify Relief Under Local Rule 7-18

#### 1. Stewart Was In Possession Of The Facts At The Time She Filed Her Original Application To Continue The Case Management Dates On March 25, 2005

Stoller asserts Stewart did not know that the court had set case management dates or that her attorneys' failure to comply with discovery obligations had prejudiced her case until he began speaking with her on March 21, 2005. While Stewart contends this "new" information merits reconsideration of the court's prior order, she does not explain why she failed to adduce these facts in support of her original application to continue the case management dates. That application contained no information regarding Stewart's knowledge of her attorneys' litigation activities. Because Stoller advised Stewart of the case management dates and of the defaults by her attorneys commencing on March 21, 2005 – several days before the original *ex parte* application was filed – the facts are not "new," and cannot be properly considered for the first time in the context of the pending motion for reconsideration. See CA CD L. R. 7-18(a) (providing that reconsideration may be granted based on "a material difference in fact or law . . . that in the exercise of reasonable diligence *could not have been known to the party moving for reconsideration* at the time of such decision" (emphasis added)); *Hinton v. Pacific Enterprises*, 5 F.3d 391, 394-95 (9th Cir. 1993) (holding that arguments raised for the first time in a motion for reconsideration are properly rejected where such arguments could have been raised prior to judgment); *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (affirming the district court's denial of a motion for reconsideration where "[c]ounsel for the trustee admitted that the evidence he was offering was available before disposition of the motion for summary judgment"); *Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963) (holding that a party seeking reconsideration based on newly discovered evidence must "show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with

---

[20]Stoller Decl., ¶¶ 11, 17, 19.

reasonable diligence have discovered and produced such evidence [prior to the court's initial ruling on the motion]"), cert. denied, 377 U.S. 923 (1964); see also *Prudential Property & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-0362-ST, 2002 WL 31488243, * 1 (D. Or. June 14, 2002) ("Parties cannot employ a motion for reconsideration as a vehicle to introduce new evidence that could have been adduced to support their original motion"). Because the evidence Stewart proffers in support of her application for reconsideration is not newly discovered, the application must be denied.

### 2. Even If The "New Facts" Were Considered, They Would Not Justify A Modification Of The Court's Scheduling Order

Even if the court were to consider Stewart's "new facts," they would not change its view, expressed in the April 4, 2005 order, that she has not demonstrated "good cause" for modification of the scheduling order pursuant to Rule 16 of the Federal Rules of Civil Procedure. See FED.R.CIV.PROC. 16(b) (stating that a "scheduling order shall not be modified except by leave of court and upon a showing of good cause"). When a plaintiff seeks to continue dates set by the court at a scheduling conference, she must first show "good cause" for modification of the scheduling order under Rule 16(b). See *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

This good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson, supra*, 975 F.2d at 609. A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she could not meet the timetable set forth in the order. See *Zivkovic, supra*, 302 F.3d at 1087; *Johnson, supra*, 975 F.2d at 609. "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic, supra*, 302 F.3d at 1087 (citation omitted); see also *Johnson, supra*, 975 F.2d at 609 ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification").

Even taking into account the "new facts" proffered by Stoller, the court finds that Stewart failed to act diligently in attempting to comply with the court's deadlines, since she made no effort to monitor the progress of her case and did not act promptly to address the missed deadlines once she learned of them. It has been long held that a party to litigation "is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)); see also *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97 (1993) (quoting *Link*); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (holding that clients are "considered to have notice of all facts known to their lawyer-agent").

In *Link*, the Supreme Court held that the district court properly dismissed a case for failure to prosecute when plaintiff's attorney failed to appear at a scheduled pretrial conference after litigating the

action in a dilatory fashion. *Id.* at 633. The court observed: "There is . . . no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 633-34.

More recently, the Court held that, in examining whether to relieve creditors in a bankruptcy proceeding of a default based on "excusable neglect," the analysis should focus not on "whether respondents did all they reasonably could in policing the conduct of their attorney, [but] rather . . . on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court-ordered bar date." *Pioneer Investment Services, supra,* 507 U.S. at 396. The creditors in *Pioneer* failed to file proofs of claim in a timely fashion in the bankruptcy court, purportedly because of their attorney's negligence. Emphasizing that "respondents [should] be held accountable for the acts and omissions of their chosen counsel," the Court stated that the proper inquiry was "whether the neglect of respondents and their counsel was excusable." *Id.* at 397 (emphasis original).

The Ninth Circuit has joined other circuits, however, in distinguishing between "a client's accountability for his counsel's neglectful or negligent acts – too often a normal part of representation – and his responsibility for the more unusual circumstance of his attorney's extreme negligence or egregious conduct." *Community Dental Services v. Tani,* 282 F.3d 1164, 1168 (9th Cir. 2002). In *Tani,* the court considered a defendant's request to have a default judgment set aside under Rule 60(b)(6), which permits a court to grant relief if a party "demonstrates 'extraordinary circumstances which prevented or rendered him unable to prosecute [his case].'" *Id.* at 1168 (quoting *Martella v. Marine Cooks & Stewards Union,* 448 F.2d 729, 730 (9th Cir. 1971) (per curiam)). Noting "the general rule" enunciated in *Link,* the court nonetheless concluded that an attorney's "gross negligence [could] constitute 'extraordinary circumstances' warranting relief under Rule 60(b)(6)." *Id.*; see also *id.* at 1169 ("We join the Third, Sixth, and Federal Circuits in holding that where the client has demonstrated gross negligence on the part of his counsel, a default judgment against the client may be set aside pursuant to Rule 60(b)(6)").

Turning to the case before it, the court concluded that defendant's attorney had "virtually abandoned" him, engaging in "inexcusable and inexplicable" conduct that included failure to follow court orders, failure to make court appearances, failure to file and serve pleadings, and failure to oppose motions. *Id.* at 1170-71. This resulted, the court stated, in defendant "receiving practically no representation at all." *Id.* at 1171. The situation was exacerbated by the fact both the attorney and defendant's financial advisor "repeatedly" represented to defendant that the attorney "was performing his responsibilities, . . . deliberately misleading [defendant] and depriving him of the opportunity to take action to preserve his rights." *Id.* Accordingly, the court held that the client had demonstrated "extraordinary circumstances" justifying relief under Rule 60(b)(6). *Id.*

In reaching this result, the court made clear that it was not applying the "excusable neglect" standard of Rule 60(b)(1). See *id.* at 1170 n. 12 ("Our holding that gross negligence on the part of the

attorney may constitute 'extraordinary circumstances' under Clause 60(b)(6) does not affect what may be defined as 'excusable neglect' under Clause 60(b)(1). The clauses are mutually exclusive. . . The 'excusable neglect' clause is interpreted as encompassing errors made due to the 'mere neglect' of the petitioner whereas (b)(6) is intended to encompass errors or actions beyond the petitioner's control"). The court also distinguished *Link*, noting that it involved a dismissal for failure to prosecute, rather than a motion to vacate a default judgment under Rule 60(b)(6). See *id.* at 1170 ("The Supreme Court's decision in *Link* does not require a contrary result. While it is true that *Link* states that an attorney's actions are chargeable to the client, the Court expressly declined to state whether it would have held that the district court abused its discretion if the issue had arisen in the context of a motion under Rule 60(b). . . . Thus, *Link* does not serve as a barrier to establishing the rule that gross negligence by a party's counsel may constitute 'extraordinary circumstances' under Rule 60(b)(6)").

Here, the standard is neither "extraordinary circumstances" nor excusable neglect," but "good cause." Several courts have held that "good cause" requires more than "excusable neglect." See, *e.g., In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (stating that "the *Pioneer* court did not in any way link its discussion of 'excusable neglect' with 'good cause,'" and concluding that "'good cause' requires a greater showing than 'excusable neglect'"); *Lujano v. Omaha Pub. Power Dist.*, 30 F.3d 1032, 1035 (8th Cir. 1994) ("Several courts of appeals have held that good cause requires at least excusable neglect"); *Colasante v. Wells Fargo Corp., Inc.*, 211 F.R.D. 555, 560 (S.D. Iowa 2002) ("The good cause standard requires more than excusable neglect"); *Corkrey v. Internal Revenue Service*, 192 F.R.D. 66, 67 (N.D.N.Y. 2000) (stating, in the context of a Rule 16(b) request for modification of a scheduling order, that "[a] difference exists in the standards for 'excusable neglect' and for 'good cause'" and citing *Kirkland*). The *Johnson* court held that Rule 16(b)'s reference to "good cause" was "a close correlate" of "extraordinary circumstances." See *Johnson, supra*, 975 F.2d at 610. Applying these standards, if all Stewart has shown is ordinary negligence on the part of her attorneys, then *Link* applies, and she must be held accountable for her lawyers' lack of diligence. If, on the other hand, she has shown that her lawyers were guilty of gross negligence to which she was an innocent party or of abandonment, then, applying *Johnson* and *Tani*, a finding of extraordinary circumstances or good cause, justifying a modification of the scheduling order, would be warranted.

Although Stewart's former and current attorneys have prosecuted this case in a dilatory manner, they did not completely abandon Stewart. Through her attorneys, Stewart filed two amended complaints and litigated two motions to dismiss. The attorneys participated in an early meeting of counsel, made court appearances, communicated with Stewart about scheduling and rescheduling her deposition, produced more than 600 pages of documents after arranging for several extensions of time to respond, and prepared and served late responses to defendants' requests for admissions. More importantly, unlike the defendant in *Tani*, Stewart does not allege that her attorneys affirmatively misrepresented the progress of the case to her, nor even that she inquired about its progress.

Accepting as true the statements in Stewart's declaration and the hearsay statements in Stoller's declaration, Stewart's showing is deficient as she has provided no explanation for her failure to ask her

attorneys about the progress of the case and about the case deadlines. Stoller states that Stewart knew of Webb's "abandonment" in the fall of 2004, and that Lubell assured her the matter was progressing at that time.[21] It was after she received this "assur[ance]" that defense counsel failed to comply with the deadlines for discovery responses, failed to produce Stewart for deposition and failed to propound timely discovery. Stewart knew, however, that her deposition had been scheduled and rescheduled, and had never actually been taken. She also knew that none of her three attorneys had informed her about the cancellation of the original deposition date. Given her "abandonment" by Webb, these events should have caused Stewart to inquire about the progress of the case, and not blindly rely on the assurance she received from Lubell. Moreover, Stewart's current attorney states that "[f]rom March 21, 2005 through April, [he] had several conversations with [Stewart] about the status of the case, [including a discussion] of the court's cut-off dates."[22] Despite the fact that Stewart knew of her attorneys' errors and omissions as early as March 21, 2005, she continued her failure to comply with discovery obligations, and did not bring this motion for reconsideration of the court's April 4, 2005 order for more than six weeks. In the interim, she missed the deadline for filing opposition to defendants' motions for summary judgment. Given this history, the court cannot find that Stewart was an innocent party who was abandoned by her attorneys. Rather, it appears she acquiesced and was complicit in their conduct by failing to monitor the progress of the case, despite the receipt of specific information regarding her attorneys' failure to attend to the litigation.

In sum, although she had multiple reasons to be concerned about her representation in this case, the record is devoid of evidence that Stewart monitored or inquired about the progress of the litigation after the fall of 2004. Accordingly, even were the court to consider them, the facts Stewart presents in support of her motion for reconsideration do not provide an adequate basis for the court to set aside its prior order declining to alter the case management schedule.

### C. Plaintiff's Motion To Withdraw Admissions Pursuant To Rule 36(b) Of The Federal Rules of Civil Procedure

Under Rule 36(a) of the Federal Rules of Civil Procedure, if a party fails to answer a request for admission within 30 days after it is served, the request is deemed admitted. FED.R.CIV.PROC. 36(a) ("The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney"). "The general power of the district court to control the discovery process allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)." *Asea, Inc. v. Southern Pac. Transp. Co.*, 699 F.2d 1242, 1247 (9th Cir. 1982). Nonetheless, the court

---

[21] *Id.*, ¶¶ 11, 20.

[22] Stoller Decl., ¶ 11.

may permit a party to withdraw its admissions under appropriate circumstances. Rule 36(b) provides:

> "Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." FED.R.CIV.PROC. 36(b).

As the Ninth Circuit has explained, "[t]wo requirements . . . must be met before an admission may be withdrawn: (1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995); see also *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001) (same).

The first prong of the Rule 36(b) test "is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley, supra*, 45 F.3d at 1348. If the first prong is satisfied, the party who obtained the admission must demonstrate prejudice that is "not simply that the party who obtained the admission will not have to convince the factfinder of its truth. Rather, [prejudice] relates to the difficulty a party may face in proving its case, e.g., . . . because of the sudden need to obtain evidence" regarding the questions previously deemed admitted. *Id.*

### D. Plaintiff's Request To Withdraw Her Admissions Must Be Denied Because Withdrawal Will Prejudice Defendants

Stewart offers no explanation other than neglect for her extraordinary delay in responding to defendants' requests for admissions. Stewart's current attorney states that he was retained in early March with the understanding that "certain immediate things . . . needed to be accomplished," including the preparation of "respon[ses] to 18 sets of requests for admissions and special interrogatories" served by multiple defendants.[23] Although Stoller states that he was not the attorney responsible for discovery responses at that time,[24] he indicates that he contributed to the delay in serving responses because he received the responses from his co-counsel "[i]n or about the end of April, 2005," but waited more than a week to serve them.[25]

Defendants do not dispute Stewart's assertion that the denial of her motion under Rule 36(b) may foreclose her from arguing the merits of the case because some of the admissions concern the ultimate

---

[23]Stoller Decl., ¶ 3.

[24]*Id.*, ¶ 4.

[25]*Id.*, ¶ 10.

issues to be decided. They contend, however, that they will be prejudiced by the withdrawal of Stewart's admissions, since the responses were 59 days late,[26] and it will now be much more difficult for defendants to prove the admitted matters.[27] Defendants complied with the court's scheduling order, including the discovery cut-off and the motion hearing cut-off dates. A hearing on defendants' motions for summary judgment is set for June 13, 2005. Trial is scheduled to begin July 12, 2005. Defendants contend that they were hampered in their efforts to obtain evidence concerning the matters covered by Stewart's admissions by her failure to appear for deposition and to provide *any* responses to special interrogatories that were served contemporaneously with the requests for admissions.[28] Defendants state that the special interrogatories – to which *no* responses have ever been filed – sought to discover "all facts, witnesses and documents upon which any denials [of requests for admission] are based."[29]

Because defendants are now unable to take additional discovery regarding the matters covered by the admissions and because Stewart failed to file a motion to withdraw her admissions until after the deadline for filing dispositive motions had passed (and the deadline for Stewart to file opposition to the summary judgment motions had passed as well), withdrawal of the admissions at this stage would prejudice defendants. See *Saroyan Lumber Co., Inc. v. El & El Wood Products Corp.*, 126 Fed.Appx. 371, 372, 2005 WL 660177, * 1 (9th Cir. Mar. 11, 2005) (Unpub. Disp.) (holding that the district court did not abuse its discretion in denying a motion to withdraw admissions where plaintiff "did not seek to withdraw the deemed admissions until the discovery cut-off had passed and defendants were unable to conduct discovery on the facts deemed admitted"); *Commonwealth Enterprises v. Liberty Mut. Ins. Co.*, 101 F.3d 705, 1996 WL 660869, * 3 (9th Cir. Nov. 13, 1996) (Unpub. Disp.) ("Although it met the first prong, Commonwealth was not entitled to withdrawal because Liberty Mutual would have been prejudiced by the withdrawal. Discovery had already closed and trial might have been delayed because of the short time between withdrawal and trial. Commonwealth argues that discovery could have been re-opened and that Liberty Mutual in fact needed no discovery because it learned all that Commonwealth knew during the course of the arbitration proceedings. Re-opening discovery does not mitigate prejudice from trial delays or hastened discovery, however, particularly in light of Commonwealth's delay in bringing its motion to withdraw"); *O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 46-47 (D. Conn. 1985) (denying plaintiff's motion to withdraw admissions where he had twice requested and been granted extensions of time to answer requests for admission prior to missing the final deadline, and had attempted to withdraw the admissions only in the context of a pending summary judgment motion). Accordingly, Stewart is unable to meet the second prong of the Rule 36(b) test, and her motion must be denied.

---

[26] Defs.' Opp. at 2

[27] *Id.* at 5.

[28] *Id.* at 2, 5.

[29] *Id.* at 5.

## III. CONCLUSION

For the foregoing reasons, Stewart's motion for reconsideration of the court's April 4, 2005 order is denied. Her motion to withdraw admissions pursuant to Rule 36(b) is also denied.

Stewart asserts that she delayed filing opposition to defendants' motions for summary judgment pending the court's decision of this application. Although the application was filed *after* the deadline for filing opposition had already passed, and the court does not countenance Stewart's continuing failure to comply with court rules and orders, it will permit her to file opposition to the summary judgment motions no later than **June 3, 2005**. Any reply by defendants must be filed no later than **June 8, 2005**. The parties **must** deliver a conformed courtesy copy to **chambers** in the Roybal Building on the day of filing.